MORAN LAW GROUP, INC.
CATHLEEN COOPER MORAN, I.D. #83758
RENÉE C. MENDOZA, I.D. #139939
1674 N. Shoreline Blvd., Suite 140
Mountain View, CA 94043-1375
Tel.: (650) 694-4700
Fax: (650) 694-4818
E-mail: Cathy@moranlaw.net

Attorney for Debtors

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA, DIVISION 5

In Re: ) Chapter 7
)
ERIC J. LECHNER AND KRISTIN DYER, ) Bankruptcy No.: 10-56767
)
) Date: January 14, 2011
) Time: 2 p.m.
) Place: 3020
Debtors. )
_____ ) HON. ARTHUR S. WEISSBRODT

## DEBTORS' OPPOSITION TO MOTION TO DISMISS CASE

The debtors oppose the motion of the UST to dismiss this case for abuse pursuant to 11 USC 707(b)(3).

As the UST notes, no presumption of abuse arose in this case under the analysis in § 707(b)(2); the debtors' monthly disposable income on line 50 was -$6,826. Rather, the UST claims that preschool education for the debtors' daughter and a modest contribution to a 401(k) plan, coupled with a misunderstanding about the debtors' participation in his employers Employee Stock Purchase Plan ("ESPP") constitute an abuse of the bankruptcy system. As further demonstrated herein, the grant of a Chapter 7 discharge is entirely appropriate on the facts.

**BACKGROUND**

The debtors' financial troubles are exclusively caused by their attempt beginning in 2006 to remodel the small house they owned free and clear to accommodate the arrival of

a second child. Some flavor of the disputes that arose between the debtors and their contractor, Landry and Foy, can be drawn from the Arbitration Award which followed cessation of work on the remodel and a lawsuit by the contractor against the debtors, which is attached to the declaration of Eric Lechner filed herewith.

In an attempt to complete the project and to pay the mechanics lien claim in favor of Landry and Foy, the debtors filed a Chapter 13 as case number 08-55547. The contractor vigorously opposed confirmation, even though the plan proposed to pay the secured portion of the builder's claim. The parties participated in a 5 hour BDRP session, which was ultimately unsuccessful. In the absence of support from the construction lender and with contractual completion deadlines approaching in the contract with the construction lender, the debtors acquiesced in the dismissal of the Chapter 13.

While their half-finished house stood empty and further attempts to settle with Landry and Foy unproductive, the debtors filed this Chapter 7, preferring that the foreclosure of their home take place in the bankruptcy case and any cancellation of debt income generated thereby be avoided by the bankruptcy filing.

**ANALYSIS**

**1.      The failed home remodel is a calamity within the meaning of the *Price* test for abuse.**

The UST cites *Price* for the applicable test for "abuse" under § 707(b)(3). *Price*, 353 F.3d 1135, 1140 (9th Cir. 2004). The second prong of that test asks "whether the debtor's petition was filed as a consequence of illness, disability, unemployment or *some other calamity*." *Price* at 1140 (emphasis added). The UST's motion glibly asserts that this prong of the test is not met in this case. To the contrary, the debtors submit that the cascade of consequences from the dispute with the contractor leading to the arbitration award against them is, in every sense of the word, a calamity. The debtors have lost their home, unencumbered at the beginning of the remodel; spent several years in courtrooms; and now need bankruptcy relief.

This bankruptcy is not necessitated by unbridled personal consumption or living an

extravagant life style. As the debtors' schedules show, their financial life is virtually free of credit card or other unsecured debt. Their financial difficulties arise exclusively from their disastrous attempt to stay in the home they enjoyed and expand it to accommodate their family.

**2.      The UST misstates the effect of ESPP participation on debtors' finances.**

Ms. Dowell's declaration concerning the debtors' participation in Mr. Lechner's employer's ESPP is wrong on the facts. An error in the debtors' schedules contributes to the misunderstanding, but the debtors' testimony at the 341 meeting, which Ms. Dowell declares she listened to, corrected the mistake. The debtors will amend Schedule I to be consistent with the testimony at the 341 meeting and the facts.

As schedule I correctly reflects, $1204 is deducted each month from Mr. Lechner's paycheck and invested in company stock. The debtors make no assertion about the deduction as an expense; they merely report the facts and filed a Schedule I that accurately reflects the deductions actually made from the pay stub.

The debtor is guaranteed a 15% return on the investment in company stock through the ESPP if the stock is sold at the first available opportunity; thereafter he takes on market risk. So, expressed in monthly numbers, the debtors derive approximately $180 a month in gain on their investment (15% of $1204). The elements of their income therefore are 1) salary, 2) bonuses as received, and 3) the gain on the stock sales.

Schedule I does not, and should not, reflect the return of capital effected on the sale of the stock, as that is not "income" in anybody's book.

At some level, trustee's exclusion of the stock sales and the gain on the sale seem not to be the source of the mythical monthly net disposable income in Mr. Martinson's declaration, so perhaps it does not merit further discussion.

**3.      The Totality of the Circumstances Support Debtors' Entitlement to a Chapter 7 Discharge**

The UST claims that the debtors' budget contains "excessive items", a negative factor in the *Price* test. Those "excessive items" consist of retirement savings of $241 a

month and nursery school for their preschool aged daughter.

**Retirement savings**: The 9th Circuit has held that retirement savings are not per se an unreasonable expense for a Chapter 7 debtor. *Hebbring*, 463 F.3d 902 (9th Cir. 2006). "[I]n the absence of any indication that Congress sought to prohibit debtors from voluntarily contributing to retirement plans per se, we conclude that bankruptcy courts have discretion to determine whether retirement contributions are a reasonably necessary expense for a particular debtor based on the facts of each individual case." *Hebbring* at, 907.

The debtors' current retirement savings are both modest and inadequate on the facts. Mr. Lechner is 41 and the sole support of his family of four. Mr. Lechner's employer does not provide any pension. At the commencement of the case, his existing retirement savings were $162,980. Schedule B.

According to an online retirement calculator designed to figure how much an individual must set aside currently to fund retirement at 75% of their current income, the debtors should be saving approximately 25% of their current income to meet that goal. See Declaration of Cathleen Cooper Moran filed herewith. With a monthly income of approximately $12,000, 24% of their income would constitute a monthly contribution of $2880. The present level of savings, far from being excessive, is woefully inadequate. See Judge Carlson's analysis of retirement savings in a tentative ruling on a motion to dismiss based on §707(b)(3), *Ng,* 08-31520, docket #42.

**Nursery School**. The debtor's three year old daughter attends nursery school. The UST's motion contends, *sub silencio*, that pre school education is not necessary and that this is doubly so since Ms. Dyer does not work outside the home. The UST's position about the utility of nursery school is not supported by the flood of social research and the efforts of the state and federal government to get every child into preschool education. See Declaration of Kristen Dyer, filed herewith.

The debtors' decision to pay for nursery school for their daughter is not a child-care substitute, as suggested by the UST's attack on preschool for non employed parents. It is a

decision based on the importance of the first five years of a child's development, before they are eligible for public school. It seems a perversion of the balance between debtors and their creditors that the debtors' three year old is expected to sacrifice for the interest of creditors. It is not as though she will ever be three again: there is only this one window to foster early brain development .

While the current year's schooling has been paid for, the debtors' daughter has one or perhaps two more years before she is eligible for public school.

The debtors have made a reasoned, and perhaps risky decision, to forego retirement savings, or in fact any form of savings, in order to further their child's education and long term well being. In light of the modesty of the balance of the debtors' life style, that choice should be respected by the bankruptcy system.

**4.      Return to unsecured creditors overstated**

The UST's assessment of the percentage of the unsecured debt that could be paid in a five year Chapter 13 makes a huge, and probably erroneous, assumption that the junior lienholders on the half finished house will be paid at foreclosure. It seems far more likely that the lien of Landry and Foy ( $179,000) and that of Christopher Demetriou ($31,000) will be cut off by the foreclosure of the $283,000+ claim of PHH Corporation.

If the junior liens are cut off, the unsecured debt total swells to nearly $350,000 and the percentage return to unsecured creditor shrinks. The mythical $1147/month over 60 months, less 10% trustee's commission, yields a return to creditors of 18%, without provision for the debtors' attorney's fees for that proceeding. The prior efforts of Landry and Foy to block confirmation of a Chapter 13 plan suggest that the attorneys fees could be significant.

**5.      Survey of the totality of circumstances**

Since it is the totality of the picture and the sound discretion of the trier of fact that determines whether the debtors' circumstances represent an abuse of the bankruptcy system, a review of the facts in the present case is appropriate.

The debtors live in rented housing and include in their two vehicles an 8 year old

VW Beetle and a newer VW stationwagon.  They own no real estate and have essentially no savings other than retirement savings.  They have a special needs child who requires private school and a three year old.  Ms. Dyer is limited in her activities by pain from a 12 year old back injury.  They have no pension entitlements and are woefully behind in providing for their retirement.  Their present financial difficulties are not the result of improvident behavior.

**CONCLUSION**

In short, the totality of these circumstances support the grant of a discharge to these debtors.  The UST's motion should be denied.

MORAN LAW GROUP

Date: 12/30/2010       /s/ Cathleen Cooper Moran
                       CATHLEEN COOPER MORAN
                       Attorney for Debtor